```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                           EASTERN DIVISION
```

**ROBIN ANN SPURLOCK,**

      **Plaintiff,**

  vs.                                      **Civil Action 2:14-cv-499**
                                                        **Judge Frost**
                                                        **Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

**I.    Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for supplemental security income and disabled widow's benefits.  This matter is now before the Court on *Plaintiff's Statement of Errors* ("*Statement of Errors*"), Doc. No. 12, the Commissioner's *Memorandum in Opposition*, Doc. No. 14, and *Plaintiff's Reply*.  Doc. No. 15.

Plaintiff Robin Ann Spurlock filed her application for supplemental security income on March 22, 2011 and her application for widow's benefits on September 19, 2012, alleging that she has been disabled since April 2, 2005.  PAGEID 63, 214-26.[1]  The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

---

[1] Plaintiff's disability onset date was amended at the administrative hearing to February 12, 2009.  PAGEID 88.

An administrative hearing was held on November 8, 2012, at which plaintiff, represented by a non-attorney representative, appeared and testified, as did Nancy Schapero, who testified as a vocational expert. *PAGEID* 80-84. In a decision dated February 8, 2013, the administrative law judge concluded that plaintiff was not disabled from February 12, 2009, through the date of the administrative decision. *PAGEID* 63-75. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 3, 2014. *PAGEID* 48-51.

Plaintiff was 53 years of age on the date of the administrative law judge's decision. *See PAGEID* 75, 214. She has a limited education, is able to communicate in English, and has past relevant work as a home health aide. *PAGEID* 73-74. Plaintiff is an unmarried widow of a deceased insured worker. *PAGEID* 65. She meets the non-disability requirements for the disabled widow's benefits set forth in Section 202(e) of the Social Security Act through July 31, 2019. *Id*. Plaintiff has not engaged in substantial gainful activity since February 12, 2009. *PAGEID* 65-66.

## II. Evidence of Record[2]

Plaintiff testified at the administrative hearing that she had

---

[2] The Court's discussion of the evidence is limited to the issues presented in plaintiff's *Statement of Errors*. Plaintiff's *Statement of Errors* discusses the testimony of plaintiff and the vocational expert at the administrative hearing and contains one string citation to demonstrate that plaintiff's "examining doctors noted her contemporaneous complaints of pain and mental limitations over the years." *Statement of Errors*, pp. 3-5, 8. According to the *Statement of Errors*, "[t]he issues herein are primarily legal issues and not fact driven." *Id*. at p. 6.

2

worked at Family Senior Care as a home health aide for four or five years, for "not quite" 25 hours a week. *PAGEID* 89-90, 102-03. Plaintiff provided care for the elderly, includings cleaning, washing dishes, sweeping, dusting, cooking, bathing, dressing, administering medication, cleaning windows, and "whatever the need is." *PAGEID* 91, 93-94. Plaintiff's work was physically demanding and required "a lot of bending, moving and that kind of stuff." *PAGEID* 91, 93. She had cared for the same client for three or four years, but discontinued her care for other clients because she could not "physically take care of them." *PAGEID* 92. Plaintiff worked four hours at night, five to six days a week. *Id*. She works a few minutes at a time but then must sit down "for a little bit." *Id*. She can work for one-half hour or an hour before she takes her first break. *PAGEID* 93.

Plaintiff testified that she cannot work full-time because of neck and back pain and because "just setting here [at the administrative hearing], my neck is hurting clear down into my spine down [to my lower back]." *PAGEID* 91. She can stand and wash dishes for approximately 10 to 15 minutes before having to stop due to neck and back pain. *PAGEID* 94. She has trouble sitting due to her neck and back pain. *PAGEID* 97.

Plaintiff has not undergone surgery and declined steroid injections in her neck in favor of physical therapy. *PAGEID* 95. She was in her second week of physical therapy at the time of the administrative hearing. *PAGEID* 96-97. Her physical therapist advised

3

her to lift no more than five pounds. *PAGEID* 97-98. However, she had helped someone move the week prior the hearing and "couldn't walk" the following day at physical therapy because she lifted items weighing seven or eight pounds. *PAGEID* 98-99.

Plaintiff also testified to trouble with her memory (which she attributed to two strokes) and she becomes confused easily. *PAGEID* 96, 100-01. Her hearing had worsened in the prior two or three years. *PAGEID* 101.

Plaintiff also has Hepatitis C, which causes fatigue. On the days that she does not work, she lies down and rests. She forces herself to keep her house "straightened up." *PAGEID* 101-02.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually found by the administrative law judge. *PAGEID* 106-07. According to the vocational expert, such an individual could not perform plaintiff's past relevant work as a home health aide, but could perform such jobs as price marker, janitor, and hand bander. *Id*.

**III. Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of "degenerative disc disease, spinal stenosis, lumbar spondylosis, hyperparathyroidism, late effects of a cerebrovascular accident, adjustment disorder, and cognitive disorder." *PAGEID* 66. The administrative law judge also found that

4

plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She can never climb ladders/ropes/scaffolding. She should avoid concentrated exposure to cold, heat, wetness, vibration, hazards [sic] machinery, and heights. She can perform simple tasks with few work place changes and no fixed production rate or quotas.

*PAGEID* 66-69. Although this RFC precludes the performance of plaintiff's past relevant work as a home health aide, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such representative jobs as price marker, janitor, and hand bander. *PAGEID* 73-74. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from February 12, 2009, through the date of the administrative decision. *PAGEID* 75.

**IV. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence

5

as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff challenges the administrative law judge's credibility determination. *Statement of Errors*, pp. 6-9. Plaintiff specifically argues that the administrative law judge's credibility determination failed to comply with SSR 96-7p, relied too heavily on objective medical evidence, and improperly evaluated plaintiff's activities of daily living. *Id*. Plaintiff contends that the administrative law judge improperly discounted her activities of daily living "as not being borne out of the objective evidence" and provided a "conclusory dismissal" of her description of her activities of daily living. *Id*.

6

A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).  *See also* 42 U.S.C. § 423(d)(5)(A).  In evaluating subjective complaints, it must be determined whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994).  If so, then the evaluator must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint.  *Id.*; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

In evaluating a claimant's credibility, an administrative law judge should consider the objective medical evidence and the following factors:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

7

> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7, 1996 WL 374186 (July 2, 1996). The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness's demeanor while testifying. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge evaluated plaintiff's credibility as follows:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate

8

the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

As previously noted, the claimant alleged an inability to work due to Hepatitis C and strokes (Exhibit 3E). At the hearing, she also alleged that she has pain in her neck and back as well as problems with her memory (See hearing testimony).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

At the hearing, the claimant testified that she currently works for Family Senior Care. She stated that she is a home health aide and takes care of an elderly patient about 25 hours a week. She stated that her job duties consist of cleaning, dusting, vacuuming, cooking, and bathing patients. She also indicated that she has to do a lot of bending and moving while at work. However, she alleged that she takes breaks throughout her work shift. As to impairments, the claimant alleged that she has cervical pain, which radiates down her lower back. She stated that she has not had any surgery or injections on her neck or back. However, she indicated that she currently goes to physical therapy twice a week. She also stated that she takes medications for pain. In addition to the aforementioned, the claimant testified that she has Hepatitis C, which makes her feel tired. As to physical abilities, she testified that she is unsure how long she can sit at one time. However, she alleged that her physical therapist told her to lift no more than five pounds. As to activities of daily living, the claimant testified that she goes to church, works, and cleans her house. As to mental health, she alleged that she has memory problems and gets confused easily.

The objective findings do not support the extreme limitations alleged by the claimant and reveal that she is not fully credible. As previously noted, records from Mid Ohio Cardiology indicated that the claimant had a history of a previous embolic cerebrovascular accident in 2005 that affected her right thalamic and left cerebellar areas. According to a transesophageal echocardiogram (TEE), the claimant had an atrial septal aneurysm, but no atrial septal defect. There was also evidence of a patent foramen ovale (PFO). However, the claimant was resistant to a percutaneious closure. Instead, she was placed on Coumadin therapy, which improved some symptoms of numbness (Exhibit 2F).

Records from Riverside Methodist Hospital indicated that a computerized axial tomography (CAT) scan in December 2010 revealed mild widening of the sulci in the frontal regional bilaterally, consistent with mild cortical atrophy. However, there was no evidence of any significant interval change in June 2011 when another CAT scan was obtained (Exhibit 10F).

Due to alleged increasing difficulties with memory functioning and expressive language abilities, the claimant was referred for a neuropsychological evaluation in May 2012. Ken Bain, Ph.D. evaluated the claimant and found that she exhibited evidence of mild dysomnia and some

occasional paraphasic errors. However, he found no evidence of other significant expressive or receptive language deficits in the areas assessed. He noted that the claimant's long-term semantic recall was in the average range in the areas of vocabulary knowledge and fund of general information. However, he found evidence of mild retrieval problems, which could be moderated by the use of cueing. Dr. Bain noted that the claimant's attentional capabilities were in the average to mildly impaired range. However, he found no evidence of any significant neurobehavioral deficits, such as perseveration, impulsivity, inappropriate social behavior, or impaired self-awareness. In addition to the aforementioned, Dr. Bain noted that the claimant was reportedly maintaining part-time employment as a home health aide without any significant performance problems. As previously noted, Dr. Bain concluded that the claimant exhibited some mild cognitive deficits in selected areas, which appear to be related to her history of vascular disease and to the presence of mild atrophy in the frontal lobes. However, he indicated that a neuropsychological reevaluation would not seem to be indicated for at least another two to three years, unless there was some noticeable change in her cognitive functioning (Exhibit 10F).

As to the neck and back, consultative examiner Dr. Stephen Nutter evaluated the claimant in July 2011 and observed that she ambulated with a normal gait and appeared stable at station and comfortable in the supine and sitting positions. Examination of the cervical and dorsolumbar spine indicated that she had tenderness over the spinous process and paraspinal muscles. However, her straight leg raise test was negative for radiculopathy. She was also able to stand on one leg at a time without difficulty and had no focal deficits on neurological examination (Exhibit 4F).

The record demonstrated that the claimant presented to the emergency department a few months later with complaints of low back pain (Exhibit 6F). However, x-rays of the lumbar spine showed only moderate disc space narrowing (Exhibit 13F, p.3). In addition to the aforementioned, a pain management evaluation completed by Dr. Amish Patel indicated that the claimant had some mild discomfort with range of motion testing, but otherwise had a normal physical exam (Exhibit 15F, p.1).

As to the claimant's thyroid, records from General Surgical Associates established that she had hyperparathyroidism and had a nodule aspirated. However, on inspection there were no atypical findings. In addition, physical examination findings as well as a nuclear medicine parathyroid scan were both normal (Exhibits 9F, 11F, and 13F, p.4).

In sum, the undersigned notes the extreme symptoms and limitations alleged by the claimant are not supported by the objective findings. The undersigned notes that the record demonstrated the claimant was treated with conservative care in relation to her conditions, and has had no surgical intervention. Furthermore, although the record showed the claimant received various forms of conservative treatment for the allegedly disabling symptoms, the record also showed that she got relief from medication (Exhibit 8F, p.5). The record also demonstrated that overall, the claimant's physical examination findings were normal (Exhibits 9F and 15F).

With regard to activities of daily living, the undersigned notes that while the claimant may experience some symptoms of pain, the objective findings in the record do not support any extreme limitations in the claimant's ability to perform activities of daily living. In fact, the

10

> record revealed that she lives alone and that her daily activities revolve around going to work. The record also indicated that she does her own cooking, dishes, laundry, shopping, and bill paying (Exhibits 3F, p. 3 and the claimant's hearing testimony).
>
> As to mental health, while the record demonstrated that consultative examiner Dr. Gary Sarver found the claimant had an adjustment disorder, he found that she had a global assessment of functioning (GAF) score of 61, meaning that she had some mild symptoms, but generally functioned pretty well. In fact, Dr. Sarver indicated that the claimant was working 25 hours a week, taking care of the elderly, and appeared to have adequate independent living skills. He noted that she participated in the day-to-day demands of living. He also reported that she denied any significant depression or anxiety, stating that she was seldom angry and did not cry. On examination, Dr. Sarver found that the claimant had no difficulty with attentional pace or persistence and that her concentration appeared to be appropriate. He also found that her memory was functionally intact (Exhibit 3F).
>
> In looking at all of the psychiatric evidence of record, the undersigned notes the extreme symptoms and limitations alleged by the claimant are not supported by the objective findings. To begin, the undersigned notes that the record contained no evidence of psychiatric hospitalizations or ongoing treatment from a psychologist or psychiatrist. To the contrary, the record contained a one-time consultative examination by Dr. Gary Sarver who diagnosed adjustment disorder, which was accounted for in the aforementioned residual functional capacity (Exhibit 3F).
>
> The undersigned has considered the evidence in the light most favorable to the claimant and find limitations due to the aforementioned impairments, even so, the undersigned finds that the claimant can still engage in substantial gainful activity.

*PAGEID* 69-72.

The administrative law judge noted and followed the appropriate standards, performed an appropriate evaluation of the evidence, and clearly articulated the bases of her credibility determination. It was not improper for the administrative law judge to evaluate the objective medical evidence in evaluating plaintiff's credibility, *see* SSR 96-7, 1996 WL 374186 (July 2, 1996), and the administrative law judge specifically addressed plaintiff's activities of daily living. The administrative law judge devoted more than three pages to her consideration of plaintiff's subjective complaints, *PAGEID* 69-72, but nevertheless found that those complaints were not entirely credible.

11

The analysis and credibility determination of the administrative law judge enjoy substantial support in the record.  The Court will not – and indeed may not - revisit that credibility determination.  See *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. See *Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of*

12

*Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


December 2, 2014                          *s/Norah McCann King*
                                                     Norah M$^c$Cann King
                                United States Magistrate Judge